The next case today is Suleiman Yacouba-Issa v. Daniel Calis, appeal number 19-1343. Attorney Greenberg, please introduce yourself for the record and proceed with your argument. I'm Ruth Greenberg. Judge Lynch, with your permission, I'd like to have two minutes for rebuttal. Certainly, go ahead. I represent Ms. Yacouba-Issa. I'm entitled to represent the 15 who was refused a seat. I represent, of course, as well, the dignity of all persons and the integrity of the courts, which is what Batson and its progeny, which is Johnson, are designed to protect. I'm hopeful that we will all be in agreement here that the Supreme Judicial Courts did not acknowledge the holding of Johnson and its ruling in this case, that Johnson is clear that if facts permit an inquiry as to the nature of a peremptory challenge and whether it's discriminatory, then that inquiry is required. There isn't an inquiry permitted, inquiry precluded, where inquiry is discretionary. Discretion is removed. If the facts permit the inquiry, the judge has to do the inquiry. That's not what happened here. The question before the because this case comes to you in a very peculiar posture. I believe it to be original. It's not a case like Aspen versus Bissonnette, which is the closest case. In Aspen, you agreed with the petitioner, as I trust you will hear, that the SJC applied the wrong rule or applied the rule wrongly in violation of the Constitution of the United States. But in Aspen, you then decided that you needed to revisit whether inquiry was permitted. Here, I don't think you revisit that. Before you get to the remedy question, and if my colleagues want to get to the remedy question, that's fine. But it would be helpful to me if we backed up a minute. Just assuming that there was a violation of Batson that was egregious enough to permit us to find it to be a violation on Edpa review, that you make the argument as to why you think that's the case. And if you, in doing that, could address how this could be said to be clearly wrong, given our decision in Scott v. Gelb. Well, the question is twofold. The first question is, did the Supreme Judicial Court use the wrong standard? For my purposes, I want to just assume that for a second, that they did. And that even if they did, as in Sanchez, it could still be that you win on habeas because of an unreasonable application of that standard correctly stated. And so it's that second piece that I want you to address. I'm not sure, Judge Byron, as to your premise. Do you want counsel to assume that the SJC used the wrong standard or the right standard? The right. All right, good. Five minutes. So you put me in a difficult position with that question. What the Supreme Judicial Court said is that the facts here permitted the inquiry. So that's a fact-based determination by a state appellate court to which this court under Edpa saying that the facts permitted the trial court to make the inference either way. So it's exactly what the permissive standard of review for the first step of Batson typically requires. We've described it as clear error. The SJC described it as abuse of discretion. But that's not what Johnson says. Johnson says... And we read Johnson differently. Well, Ms. Greenberg, if you could help me this way. I understand your point. But if we move past that, I understood your brief to be also assuming that you might lose on that contention and that you nonetheless still could win. In other words, even if we overlook the SJC statement about it being permitted, and we read it as Judge Selye is suggesting it might fairly be read, that nonetheless, we still have the question of, okay, was an inference permissible here? Because if an inference was, and it was so clearly permissible that it would be an abuse of discretion to conclude otherwise, then we might be in a situation just like Sanchez. I understood you to be arguing that the record also supports you in that contention. Is that right? Yes, that's correct, Judge. So could you in making that argument, it would be helpful for me if you could explain, since we rejected a similar contention in Scott v. Gelb. So on the one hand, we've got Scott v. Gelb saying we don't agree. But in Sanchez, we have a case saying we do agree with the exact same form of the contention. It will be helpful to me if you could explain why this case is more like Sanchez than Scott v. Gelb. This case is more like Sanchez because we have no alternative, the capstone is no alternative race-neutral explanation for the challenge. And here, there is no alternative race-neutral explanation for the challenge. The Commonwealth and the SJC said the alternative race-neutral reason for the challenge was that the prosecutor believed somehow that she might recognize the juror, but that's not an alternative race-neutral explanation because what matters in the courtroom is not whether the prosecutor might recognize the juror in a contention she withdrew, but whether the juror recognizes the prosecutor, which it's clear he did not. We all recognize, if you go to, I'm sorry to take my minute, but if you go to the same stop-and-shop checkout counter, you recognize the checkout person, but the checkout person can serve on a jury where she's not related to you. The fact that she might recognize him is not what's relevant. And the fact that she both proffered that conclusion and then withdrew it. This is helpful. That's helpful. Could you also just address the comparative juror information that was presented here? And I guess I'll just give you a little context for my interest in the question. As I understand it, in Scott v. Gelb, we made a point of emphasizing that that type of information was not considered because the attorney had not presented it as a reason for drawing the inference. In Sanchez, we seem to focus on that evidence as a possible basis for drawing the inference. Here, we kind of, it seems to me a little bit of a case arguably in between in the sense that the defense counsel did raise comparative juror information as a reason for drawing the inference. The SJC then engaged with that evidence to an extent. So, if you could just address that aspect of the case, that would be helpful to me. Right. The court is correct. The SJC engaged with the wrong conclusion. The record, unlike Scott v. Gelb, is clear here because Massachusetts law says, and it's cited in my brief, Commonwealth v. Long, that once the lawyer says there are no more black people here, you've now made the jury all white by exercise of this peremptory challenge. No one contradicts that that mistake is true. So, we don't need juror questionnaires. What we have is a jury in which this juror is distinguished. Counsel, that's time. Finish up, please. Yeah. This juror is identical to all other jurors except for the fact he's a black man. That's like Sanchez. Thank you. Attorney Greenberg, please mute your audio and video, and Attorney Badway, please unmute your audio and video and introduce yourself and proceed with your argument. Good morning. Assistant Attorney General Eva Badway representing the respondent Daniel Callas. The Massachusetts Supreme Judicial Court reasonably rejected the petitioner's claim that his 14th Amendment rights guaranteeing equal protection and the right to select an impartial jury from discrimination were violated by the state court trial judge. Your Honors, if I may, I'm going to point the court to the three factors that the SJC took into consideration when reasonably rejecting the petitioner's claim. As the SJC noted, a female juror who had been born in Africa was seated as a juror, suggesting that the juror had no bias against African-American jurors who were born in Africa. Both the petitioner and the victim, one were of African-American, so there was no bias of an interracial killing. And third, and most importantly, as the SJC focused on, the prosecutor during the voir dire practice when inquiring of juror number 15 said to the court, Your Honor, he looks familiar, I just can't place him. And these are the three specific facts that the SJC took into consideration. What are we supposed to read into that third fact, Ms. Badway? I'm just puzzled by that. Why does that cut either way? He looks familiar, I can't just place him. Well, I think it's the SJC. Why does that somehow become an explanation for striking him? Your Honor, I'm not certain that it becomes an explanation for striking him, but in considering the race-neutral explanation for the preemptory challenge, what the SJC said was that if that juror was seated, and then later on, the prosecutor recognized why or she recognized that juror, then that juror number 15 would not be able to serve on the jury. That opens a pretty wide avenue for anyone who wants to get rid of a juror. Well, maybe I recognize him, Judge. He might come to me later. And it seems to me that's a pretty thin rule. Your Honor, I understand your concern. And the SJC in this case did say that it's a very close question. And because we're here on EDPA review, where this court must defer to the state court's factual findings, unless there's an unreasonable application of Supreme Court law, I want to point the court to footnote 14. Before you jump to that footnote, what do we do with the fact that the prosecutor here seemed to withdraw that ground? Your Honor, I would say that the record is unclear about whether she withdrew that ground. She said she looked familiar, and then she... Yeah, if we take the question, though, under Johnson as whether an inference is permitted, it's very unclear whether the prosecutor even was concerned about this. How could you say that the statement by the prosecutor suffices to alleviate the inference of discrimination that otherwise could be present? I just don't understand that. It might be a reason to say that you don't have to come to the conclusion that discrimination is there, but how could you say it's not permissible to find the discrimination based on what's there? Because that statement, as you say, is ambiguous at most as to whether the prosecutor was even suggesting that was a reason at all for what it was doing. Your Honor, first of all, I would like to point the court to the SJC decision, where they say that there was enough here, if the judge wanted to inquire, that he could have inquired. And I am going to point the court to footnote 14 of the SJC decision. And there, what the SJC says is that it would have been better if the trial judge had allowed for the prosecutor to offer a race-neutral explanation, but they didn't. But they said, when a defendant claims that a prosecutor's peremptory challenge of a prospective juror is motivated by discriminatory intent, we urge judges to think long and hard before they require no explanation from the prosecutor and make no findings of fact. So, Your Honor, what I... Yeah, but in Sanchez, we sometimes, on habeas, find that there was an unreasonable application of that deferential standard. And I guess I'm just trying to figure out what is in this record that distinguishes this from Sanchez. So far, you've pointed to... Sanchez. And as you stated, you also have... Five minutes. ...in the First Circuit. In this case, it's more like... Take them one by one. Okay, Sanchez. In Sanchez, this court expressed some concern that the SJC did not recognize that by just excluding one African-American male, that that could be enough and an unreasonable application of Batson. Here, in the SJC decision, the court clearly considered, the SJC acknowledged, as did the trial judge, that just by... But what did it point to that would then, having recognized that, what did it point to that would support, even reasonably, the idea that the inference of discrimination was not still permitted? That's what I'm not... There was an African-American female jury who was seated up on the jury and that there was... There was an African-American juror in Sanchez. Your Honor, but it wasn't a similarly situated African-American juror in Sanchez. And in this case, I also would like to point out that... How is it similarly situated here? Well, because in this case, there's no other information. The record is not the same as in Sanchez. There are no juror questionnaires that could be... We know the person's of a different gender. Yes, Your Honor, we do know that the person is of a different gender, but we also know that there was another African-American male in the jury, Venera, who they took from his name, was excused for cause because he had a vacation planned. As the district court also... I'm just going to point the court to some other things. There's nothing in this record that signals any kind of bias, either by the judge or the jury. There was nothing in Sanchez that signaled that. I disagree, Your Honor. In Sanchez, you have the jury questionnaires. The record was more complete than the case that we have before you right now. The information provided by this petitioner is only that a single African-American juror was not seated. That's the only information that you have. He did not build up the record as to what the other jurors in the Venera looked like. Counsel, can I, before you exhaust your time, there's a question that's really bothering me, which is a little bit different, and it goes to the unreasonable application approach. In footnote 13, well, first of all, you'll agree, would you not, that Batson requires in assessing the existence of a prima facie case a totality of the circumstances approach? I do agree with that. And in footnote 13, the SJC says flatly that it will not consider the strike with respect to the juror's prior involvement with law enforcement. Wasn't it required to consider that under the totality of the circumstances? Didn't have to give it any weight, but to say it wouldn't consider it, isn't that a violation of the Batson standard? I don't think it's a violation of the Batson standard in this case, Your Honor, because I think that what they were saying, what the SJC was saying was the fact that this petitioner had some involvement with the criminal justice system would not make it a reason why he could not sit as a juror. But that's not what the SJC said. What the SJC said is we will not consider it. That is correct, Your Honor. And I think that what the reason they were saying it, it was because they did not find it disqualifying as a reason for the juror to be disqualified. It isn't the problem that I thought the defendant was presenting evidence of comparative criminal records to white jurors who were seated. And the argument was my juror does not have a worse record than the white jurors who were seated. And there's no evidence the SJC looked at it precisely the reason Judge Selya said, it expressly said it wouldn't consider it. But if Your Honor would also look at the record, the juror, the prospective juror number 15 said that his involvement with the criminal justice system would have no impact on him being a juror. That's not the point of why the information about the record was being put forward by defense counsel. It was to suggest that an inference of race discrimination could be gleaned from the fact that jurors with worse criminal records than this juror who were white were seated. And there's no way the SJC addressed that contention. Well, I think that the SJC was not agreeing with that inference. They were saying that just because someone had been arrested would not be a disqualifying reason why that person could not sit as a juror. And I think that this court on habeas review has to give deference to the SJC's factual findings under 2254E. And what kind of factual finding can we glean from a statement that will not consider it? That means to me that the district court didn't make any factual, the SJC didn't make any factual finding about it. Your Honor, I think that the SJC said that they would not consider that juror number 15's involvement with the criminal justice system in Kansas as a reason that the person could not sit as a member of the juror. That's by not considering it. Um, I may not have read the SJC decision as closely. But when I read that line, I thought they were saying that a prior arrest is not a basis for disqualification. And therefore, they were articulating a pro-defendant, pro-Batson position. And in that sense, they said they weren't going to consider it, but they weren't going to consider it because in their view under Batson, this would not have provided a basis for disqualification. I'm not sure whether the totality of circumstances language goes to a statement like that. Thank you, Your Honor. Okay. If there are no further questions, I'll rest on my brief. I urge you to affirm the denial of Attorney Badaway, please mute your audio and video. Attorney Greenberg, please unmute your audio and video and proceed with two minutes of rebuttal. I want to give 10 seconds to the presence of an African-American woman on the jury as somehow embodying the idea that the Prosecutor's Act for dismissing the black man didn't give inference to discrimination. The presence of the African-American woman on the jury was irrelevant. That's the rule of Sanchez. No one is claiming that there was discrimination against black people. The claim is discrimination against black men. And on that question, seating a black woman doesn't allow the prosecutor to discriminate against the black man. It's the SJC error. It's wrong. Before you wrap up the comparative jury information issue, because I think how I read it as well, that it was saying couldn't count against him. But what troubles me about that, I don't see where the SJC engaged with the argument I thought the defendant had made, which is that the fact that his criminal record was not as bad as the criminal record of white jurors who were seated, itself is an additional reason to infer discrimination. And since that is the evidence that was referenced in Sanchez, and since Scott V. Gelb specifically mentioned no such argument had been made by defense counsel there, it concerns me that the SJC didn't address that. Because you just addressed that aspect of the SJC's decision. Yes, exactly. The defense proffered comparative juror analysis with regard to criminal record, and the SJC specifically said we declined to consider it. But I want to use my last... So, yes. I will use my last minute, though, to engage Judge Selye on the reading of Johnson. As I see it, and as the courts have seen it, the opposite of permit is preclude. And what Johnson clearly says... Counsel, that is time. Finish up a few more sentences, please. Thank you so much. So, when Johnson is clear, if inquiry is permitted, then inquiry is required. Inquiry here is not precluded by anything in this it's a fact-based finding by the SJC that had the court said, we will inquire, the court would not have been reversed. If it was possible for the court to inquire, if it was permitted for the court to inquire, if the court was not precluded from inquiring, then the court had to inquire. And the failure to inquire is a Johnson violation. Let me go to question on this question. If you disagree, rule on it and say what you think. And let me have the question. If the inquiry is permitted, the inquiry is required. Thank you, counsel. Thank you. Thank you. Thank you. That concludes argument in this case. Attorney Greenberg and Attorney Badawi should disconnect from the hearing at this time.